## BROWN v. EWING and Others.

Judgment on an agreed statement of facts, substantially, as follows: The land in controversy is part of ten sections reserved to A, an *Indian*, by treaty, in 1832, between the *United States* and the *Pottawattamie Indians*. The lands were to be selected under the direction of the President. A died in 1834, leaving two children and heirs, B and C, who conveyed to the plaintiff's vendors. In 1838 the selections of lands were made, and patents issued to A, which, it is conceded, vested the title in the plaintiff's vendors, and it is conceded that the plaintiffs have title, unless their vendors divested themselves of title by the following agreement, entered into between them and D, the commissioner appointed to make the locations, to-wit: "Agreement between E and F, and G and H, of the first part, and D, of the second part, witnesseth, that, whereas, said parties have conflicting claims upon ten sections of land, reserved, in 1832, by treaty, to A, now deceased, and the same having been inherited by his two sons, B, the elder, and C, the younger, brother. The said E and F, and G and H, of the first part, relinquish and abandon all claim which they have upon the undivided half of said ten sections, inherited by said C, the younger brother; and the said D, the second party, on his part, in like manner, relinquishes and abandons all claim which he has upon the undivided half of said ten sections, inherited by said B, adult heir of said A. For the purpose of effecting a division of said sections, the following agreement is consented to by said party of the first part, and said party of the second part, provided and conditioned, that the same shall be confirmed and approved by the proper court, or courts, having jurisdiction thereof, when legal partition and division thereof shall be made, to-wit:" Here

follow the stipulations as to the division, specifying the land in controversy, among others, to be taken as the share of said C, and by the terms of the agreement to go to D. The agreement then proceeds: "Said parties mutually agree to ask and solicit said court, in a reasonable time, to confirm the aforesaid partition, or to have commissioners appointed to make partition thereof according to law. The considerations of this agreement are a compromise and settlement by mutual relinquishment, as aforesaid, of the parties' conflicting claims upon said ten sections, the conditions and stipulations aforesaid, and six hundred dollars, secured to be paid by said D, to said party of the first part." Signed. It was further agreed, that, after the execution of the above instrument, D executed a conveyance of the land in controversy to the defendant, and that he, D, has since died; and also, that the sole consideration for the execution of the above agreement was another agreement, executed by D concurrently therewith, which is also set out, but need not be copied here. This last-mentioned agreement, signed by D, recites that he had been appointed locating commissioner, and that he was satisfied that E, F, and others, naming them, were purchasers and owners of certain reservations; it then proceeds to make the locations, and then stipulates, among other things, as follows: "All of which said selections, and locations, I will report to the proper land-officers, and will, if no legal objections to the same are found to exist, then report the same to the Secretary of War, or the President of the *United States,* and desire the same confirmed; or, should such objections be raised as prevent the confirmation of these selections, then the said persons interested may select other lands, which I will report, etc.; nor will I allow any other person or reservee to interfere with the selections these individuals make, but will see that their selections are confirmed," etc.

*Held,* that the contract and facts set out did not constitute an executed, but merely an executory agreement; and that, in determining whether the agreement should be held to be executed or executory, the facts, that it was not under seal, and contained no words of inheritance, together with its other provisions, were entitled to consideration.

APPEAL from the *Kosciusko* Circuit Court.

WORDEN, J.—Suit by the appellees against *Brown*, to recover a quarter section of land. Finding and judgment for the plaintiffs. The cause was submitted on an agreed statement of the facts.

The following are the material facts agreed upon: The land in controversy is a part of the ten sections reserved to *Aub-bee-naub-bee*, by the treaty of the 27th of October, 1832, between the *United States* and the *Pottawattamie Indians*. These lands were to be selected under the direction of the President of the *United States*. Sec. 7, U. S. Stat. at large, p. 399. The reservee, *Aub-bee-naub-bee*, died in the year 1834, leaving two children and heirs, called *Paw-koo-shuck* and *Shaw-gowk-shuck*, who conveyed to the plaintiffs' vendors. In 1838, the selection having been made, a patent issued to *Aub-bee-naub-bee*, which, it is conceded, vested the title in the plaintiffs' vendors; and, it is conceded, that the plaintiffs have title, unless their vendors divested themselves of title by the following agreement, entered into between them and *John T. Douglass*, the commissioner appointed to make the locations. The agreement is as follows, viz.:

"Agreement, between *Ewing, Walker & Co.*, and *A. Hamilton & Co.*, of the first part, and *John T. Douglass* of the second part, witnesseth, that, whereas, the said parties aforesaid, have conflicting claims upon ten sections of land, reserved in the treaty of the *Tippecanoe*, of the 27th of October, 1832, to *Aub-bee-naub-bee*, now deceased, and the same having been inherited by his two sons, to-wit: *Paw-koo-shuck*, the eldest, and *Shaw-gowk-shuck*, the youngest brother. The said *Ewing, Walker & Co.*, and the said *Allen Hamilton & Co.*, of the first part, as aforesaid, relinquish and abandon all claim which they have upon the undivided half of said ten sections, inherited by said *Shaw-gowk-shuck*, younger brother, as aforesaid, and the said *John T.*

*Douglass*, party of the second part, as aforesaid, on his part, in like manner relinquishes and abandons all claim which he has upon the undivided half of said ten sections, inherited by said *Paw-koo-shuck*, adult heir of said *Aub-bee-naub-bee*, as aforesaid. For the purpose of effecting a division of said ten sections, the following arrangement is consented to by said party of the first part, and said party of the second part, provided and conditioned, that the same shall be confirmed and approved by the proper Court, or Courts, having jurisdiction thereof, when legal partition and division thereof shall be made, to-wit:" Here follow the stipulations as to the division, specifying the land in controversy, among others, to be taken as the share of *Shaw-gowk-shuck*, and by the terms of agreement, to go to *Douglass.* The agreement then proceeds: "said parties mutually agree to ask and solicit said Courts, in a reasonable time, to confirm the aforesaid partition, or to have commissioners appointed to make partition thereof according to law. The considerations of this agreement are a compromise and settlement by mutual relinquishment, as aforesaid, of the parties' conflicting claims upon said ten sections of land, the conditions and stipulations aforesaid, and six hundred dollars, secured, to be paid by said *John T. Douglass*, to said party of the first part. In testimony whereof, the said parties have hereunto subscribed their names, this 16th day of October, A. D. 1836.  "EWING, WALKER & Co.,

"*Logansport, Ind.*    "A. HAMILTON & Co.,

"Attest:    "JOHN T. DOUGLASS.

"GEORGE P. SMITH,

"J. H. KINTNER."

It was further agreed, that after the execution of the above instrument, *Douglass* executed a conveyance of the land in controversy to the defendant, and that he, *Douglass*, has since deceased. It is, also, agreed, that the sole consid-

eration for the execution of the above agreement, was another agreement executed by *Douglass* concurrently therewith, which last-mentioned agreement is also set out, but need not be copied in this opinion. This last-mentioned agreement, signed *Douglass*, recites, that he had been appointed locating commissioner, and that he was satisfied that *Ewing, Walker*, and others, naming them, were purchasers and owners of certain reservations; it then proceeds to make the locations, and then stipulates, among other things, as follows:

"All of which said selections and locations I will report to the proper land-officers, and will, if no legal objections to the same are found to exist, then report the same to the Secretary of War, or the President of the *United States*, and desire the same confirmed; or should such objections be raised as prevent the confirmation of these selections, then the said persons interested may select other lands, which I will report, etc.; nor will I allow any other person or reservee to interfere with the selections these individuals make, but will see that their selections are confirmed, etc."

It is claimed, that the transaction amounts to this: that *Douglass*, as locating commissioner, made certain favorable locations, and agreed to report them to the proper department, and recommend their confirmation, in consideration of which, the parties of the first part to the agreement agreed to release to *Douglass* one-half of the land reserved to *Aub-bee-naub-bee*, under the assumption that *Douglass* had a conflicting claim; that this agreement was contrary to public policy, and, therefore, utterly void. If this was the character of the transaction, the agreement would seem to be void.

It is laid down, that "all secret agreements, which are founded upon violations of public trust or confidence, are void. Where, therefore, a person occupying a public office agrees, for a reward, to exercise his official influence in

questions affecting both public and private rights, so as to bring about the private advantage of persons interested, the contract would be void." 1 Story on Con., p. 705, sec. 576.

But, if such be the case, the parties would seem to be in *pari delicto.* If the agreement in question be deemed to be an executed one, whereby the title to the land in question passed from the parties of the first part to *Douglass,* a Court, it would seem, would not lend its aid, either to them, or their vendees, to get rid of the conveyance thus made. If, on the other hand, the agreement be deemed executory merely, the Court would not lend its aid, either to *Douglass,* or his vendees, to enforce it. The law would not, probably, lend its aid to either party, but leave them where it found them. *Vide Swain* v. *Bussell,* 10 Ind. 438. But upon these points we need make no decision, for the reason that the defendant below stood upon his supposed legal title, derived from *Douglass.* He did not ask or seek the aid of the Court, to give him any benefit under the agreement, as an executory one. He stood upon the agreement, as an executed one, vesting the title in *Douglass.*

The question recurs, Whether the agreement should be deemed *executed,* and as vesting the title in *Douglass,* or whether it should be deemed *executory* merely.

We may remark in passing, that, if the agreement be deemed executed, and as vesting title in *Douglass,* we can not see how it would, in the least, benefit the defendant, for the reason that it would convey but a life estate. The estate conveyed terminated with the life of *Douglass.* There are no words of inheritance in the agreement, as that the land was conveyed to *Douglass and his heirs.* Without such words, as the law stood at the date of the contract, a life estate only passed. *Clearwater* v. *Rose,* 1 Blackf. 137. 4 Kent. Com., p. 5. This rule does not apply to conveyances by joint-tenants, tenants in common, or co-parceners, to their co-tenants. *Id.,* p. 7. But the parties to the agreement did

not claim, nor does the agreement purport that they held in common, or as joint-tenants, or co-parceners, but that they had "conflicting claims" upon the land. There is no *conflict* between the rights of joint-tenants, etc., but the rights of one are perfectly consistent with the rights of each of the others. It may be observed here, however, that if the agreement be deemed executory, it may be construed as an agreement to convey the fee. *Id.*

The agreement in question is neither sealed nor acknowledged. Nor, although an acknowledgment was not essential, y.et, as the law then stood, a seal was essential to an instrument conveying real estate. Without an instrument under the seal of the grantor, the title could not pass. *Swiston* v. *The Junction Railroad Co.,* 7 Ind. 597. 4 Kent. 533.

We have some curative statutes, validating conveyances in certain cases, executed without a seal. *Vide Culbertson* v. *Parker,* 15 Ind. 234. We need not determine whether those statutes are applicable to the instrument in question, as we think the agreement should be held executory merely, on other grounds than simply the want of a seal. We think, however, that the want of a seal, when by law it was essential to the conveyance of real estate, and the want of an acknowledgment, when that was customarily appended, so as to entitle the instrument to record, are circumstances to be considered, in connection with the terms of the instrument, in determining whether the parties intended to pass the title *in presenti,* or whether they intended that the agreement should be executory merely.

The operative words of the agreement are "relinquish and abandon." These words are neither apt nor expressive to convey the idea of a grant, or the passing of title from one to another. Had the parties been joint-tenants, or tenants in common, the words would have been more appropriate; and perhaps, though we do not so decide, they would be sufficient in the present case, were there no other

considerations that enter into the question. The instrument must be taken altogether, in order to determine its legal effect. The parties to the instrument, after stating that they had conflicting claims to the land, mutually relinquish and abandon to the other their claims to one-half thereof. They then stipulate, that, for the purpose of making a division, they enter into an arrangement by which each party is to have certain specific land. All this, however, as we construe the instrument, is upon the condition that the same shall be approved by the proper court, or courts, having jurisdiction thereof, when legal partition, or division thereof, shall be made. The approval stipulated for, it appears, has never been had. The relinquishment and abandonment depended as much upon the condition of approval as did the division agreed upon. The approval of the proper court was to be afterward procured. The parties contemplated, that the title to the portions taken by each should be made secure to them by the approval and confirmation of the proper court. Had the parties not agreed upon the portions to be taken by each, we can not say that they would have relinquished and abandoned their claims to any portion. We can not say, keeping in view the terms of the instrument, that the parties meant by it to divest themselves of title to one-half the land, immediately and absolutely, whether the division agreed upon should be "approved" or not. It is to be inferred, that the securing of the title, by the approval of the proper court, to the portion taken by each, was the inducement to the relinquishment of all claim to the other portion. The relinquishment and abandonment, then, as well as the division agreed upon, were to depend upon a future event, viz.: the approval provided for. This view of the instrument, coupled with the fact that it lacks an essential requisite, and one of the usual formalities of a conveyance, satisfy us that it should not be construed to vest title immediately in *Douglass;* but, on the contrary, that it should be

deemed an executory agreement merely. It follows, that the judgment below is right, and must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*Edgar Haymond* and *Moses Jenkinson,* for the appellant.

*R.* and *J. Brackinridge,* for the appellees.